## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

FIDEL NARANJO, and FIDEL J. NARANJO,
as Personal Representative for the Estate of
Nicholas Raymond Naranjo, Deceased,

       Plaintiff,

vs.                                       No. CIV 12-0898 RB/SCY

JASON HERRERA, as an Individual and
in his Official Capacity, CHRIS ROMERO,
as an Individual and in his Official Capacity,
LARRY BAKER, as an Individual and in his
Official Capacity, MARY NAJAR, as an
Individual and in her Official Capacity,
WAYNE TORPY, as an Individual and in his
Official Capacity, and THE COUNCIL OF THE
INCORPORATED COUNTY OF LOS ALAMOS,

       Defendants.

## MEMORANDUM OPINION AND ORDER

Fidel Naranjo alleges that detention center staff assaulted and battered him and his brother while they were awaiting trial in Los Alamos County, New Mexico.  Fidel Naranjo, on behalf of himself and his deceased brother, filed suit claiming damages for constitutional violations, assault, battery, personal injury, and wrongful death.  Defendants brought a motion to dismiss.  (Mot. to Dismiss, Doc. 81.)  Having reviewed the parties' submissions and arguments, the Court finds that the motion should be **DENIED** in part and **GRANTED** in part.

## I.     BACKGROUND

The following facts, taken, for the most part, from the First Amended Complaint ("FAC"), are accepted as true in order to resolve the motion before the Court.

Plaintiff Fidel Naranjo and his brother Nicholas were pretrial detainees, awaiting trial in the Los Alamos County jail.  (FAC at 3.)  On July 1, 2010, the Naranjos and a third detainee,

James Carpenter, were put on cleaning detail.  (FAC at 3.)  While cleaning, the three extracted and drank the alcohol from disinfectant wipes.  (FAC at 3.)  When the overseeing officer discovered their activities, he sent all three to the Los Alamos Medical Center to be examined for possible poisoning.  (FAC at 3.)

In preparation for transportation, the Naranjos were each shackled and handcuffed with a belly chain that restrained their arm movements.  (FAC at 3.)  At some point in the preparation process, Defendant Sergeant Jason Herrera commented that the brothers were "worthless" and called them a number of profanities.  (FAC at 4.)  Defendant Herrera said he would make sure that Fidel Naranjo never got out of jail.  (FAC at 4.)

Incensed, Plaintiff rose to his feet and called Defendant Herrera profanities of his own creation.  (FAC at 4.)  Defendant Herrera ordered him to sit down.  (FAC at 4.)  When Plaintiff refused to sit, Defendant Officers Herrera, Romero, and Baker, used physical force against him, including a chokehold.  (FAC at 4.)  Plaintiff says the chokehold amounted to strangulation. (FAC at 4.)  Defendant Herrera continued to verbally threaten Plaintiff during the struggle. (FAC at 4.)

Seeing Plaintiff and Sergeant Herrera struggle, Nicholas Naranjo and James Carpenter entered the fray.  (FAC at 4.)  Defendants Herrera, Romero, and Baker used a chokehold and force against Nicholas Naranjo.  (FAC at 4.)  Additionally, Defendant Herrera groped Nicholas Naranjo, grabbing and twisting his genitalia while holding him in a chokehold.  (FAC at 4.)  The Naranjos suffered injuries to their neck, back, wrists, arms, and legs.  (FAC at 5.)  Their injuries necessitated medical treatment and both brothers incurred hospital bills.  (FAC at 5.)

The entire incident was recorded on film.  (FAC at 5.)  Since that time, officers at the Los Alamos County Detention Center have shown the video as a cautionary tale of what happens

when detainees do not comply with officers' orders.  (FAC at 6-7.)  Plaintiff alleges that this incident is one of many unaddressed incidents of excessive force in the County, as evidenced by numerous similar complaints.  (FAC at 6.)

The brothers were charged with criminal assault and battery on a Peace Officer as a result of the incident.  (Def. Ex. A, Doc. 81-1; Def. Ex. B, Doc. 81-2.)[1]  Plaintiff pled no contest to two counts of Battery on a Peace Officer.  (Doc. 81-1.)  Nicholas Naranjo pled guilty to one count of Battery on a Peace Officer and one count of Assisting Assault on a Peace Officer.  (Doc. 81-2.)

One year after the incident, Nicholas Naranjo was ordered to return to jail after failing to pay court fines and fees.  (FAC at 7.)  On July 15, 2011, Nicholas Naranjo committed suicide the day before he was supposed to return to jail.  (FAC at 7.)  The Naranjo family believes that the past trauma and sexual assault in the jail, and the fear of similar future treatment, directly led to Nicholas Naranjo's death.  (FAC at 7.)

On July 1, 2012, Plaintiff filed a complaint in the First Judicial District Court, Los Alamos County, New Mexico.  (Doc. 1-1.)  Plaintiff alleged that Defendants Herrera, Baker, and Romero committed assault and battery and violated Plaintiff's civil rights.  (Doc. 1-1.)  Plaintiff further alleged that Defendants Los Alamos Detention Supervisor Mary Najar and Los Alamos Police Chief Wayne Torpy failed to train the officers, failed to supervise the officers, and in effect ratified the civil rights violations.  (Doc. 1-1.)  The Complaint also named Los Alamos County as a defendant.  (Doc. 1-1.)

Defendants removed the action to this Court on August 21, 2012.  (Doc. 1.)  After seeking leave from the Court, Plaintiff amended his Complaint to include the Estate of Nicholas

---

[1] Upon a Rule 12(b)(6) motion, a court may consider "matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007); *see also Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (listing exceptions to the general rule that a court may only consider the four corners of the complaint when ruling on a motion to dismiss).

Naranjo as a plaintiff and to add a count of Personal Injury and Wrongful Death.  (Doc. 38; FAC.)  Defendants move to dismiss all of Plaintiff's claims for failure to state a claim or, in the alternate, based on the doctrine of qualified immunity.  (Doc. 81.)

## II.    LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to present "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under Rule 12, a court may dismiss a complaint for failure to state a claim.  Fed. R. Civ. P. 12(b)(6).  In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff's "complaint must have enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'"  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

When reviewing the sufficiency of a complaint, the court must first identify the factual allegations and disregard any conclusory statements.  *See Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Next, the court must determine if the plaintiff's factual allegations state a plausible claim.  *Id.*  "A claim has facial plausibility when the [pleaded] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The complaint need not recite "detailed factual allegations, but the factual allegations must be enough to raise the right to relief above the speculative level."  *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556) (internal quotations omitted).

### III.    DISCUSSION

Defendants argue that all of Plaintiff's claims are barred by the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 486-88 (1994).   In *Heck*, a state prisoner's claim for malicious prosecution, if meritorious, would necessarily have invalidated the lawfulness of his state criminal conviction.   *Id.*   The Supreme Court ruled that a state court prisoner could not use Section 1983 as a vehicle to challenge the constitutionality of his state court conviction.   *Id.* Thus, for example, *Heck* bars lawfully convicted prisoners from bringing false arrest claims because false arrest requires an *un*lawful arrest.   The Tenth Circuit explains that "the purpose behind *Heck* is to prevent litigants from using a § 1983 action, with its more lenient pleading rules, to challenge their conviction or sentence without complying with the more stringent exhaustion requirements for habeas actions."   *Vasquez Arroyo v. Starks*, 589 F.3d 1091, 1094 (10th Cir. 2009) (quoting *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007)). Alternatively, where "the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed."   *Heck*, 512 U.S. at 487.

This Court is unwilling to extend *Heck* to the present facts.   Defendants argue that Fidel and Nicholas Naranjos' convictions for assault and battery on a peace officer implicate *Heck*. (Doc. 81 at 5-7.)   Both statutes under which the Naranjos were convicted require the peace officer to be acting "in the lawful discharge of his duties."   N.M. Stat. Ann. §§ 30-22-24, 30-22-26(A).   Defendants argue that any finding that the officers used excessive force, committed assault and battery, or proximately caused a wrongful death necessarily requires a finding that the officers were not lawfully discharging their duties.   The Court disagrees.

Notwithstanding *Heck*, a plaintiff can claim that a lawful arrest was conducted in an unlawful manner. *Martinez v. City of Albuquerque*, 184 F.3d 1123, 1125 (10th Cir. 1999). As the Tenth Circuit explained, *Heck* does not bar a Fourth Amendment claim based on excessive force. *Id.* The Tenth Circuit reasoned that "[t]he state court's finding that [an arrestee] resisted a lawful arrest, even if based on § 30–22–1D ["resisting or abusing any . . . peace officer in the lawful discharge of his duties"], may coexist with a finding that the police officers used excessive force to subdue him." *Id.* at 1126-27. Unlike the claims in *Heck*, excessive force claims do not challenge the lawfulness of the arrest and conviction.

A jury could find that the officers were justified in using force to subdue detainees who were assaulting and battering them, but still find that the officers used excessive force in retaliation. *See id.*; *Northington v. Jackson*, 973 F.2d 1518, 1523-24 (10th Cir. 1992) (reasoning that the "unnecessary and wanton infliction of pain" can give rise to a claim of excessive force even where a prison disturbance justifies the use of force); *Fresquez v. Minks*, No. 13-1155, 2014 WL 2579899, at *3 (10th Cir. June 10, 2014) ("[W]e reject Defendants' argument that slamming a prison inmate on the ground with enough force to break his teeth is necessarily a reasonable use of force so long as the inmate did something 'obstructive' first."). The same logic applies to state law claims for assault and battery.

Given the inapplicability of *Heck*, the Court will consider the sufficiency of Plaintiff's constitutional claims and state law claims.

**A.  Section 1983 Claims**

Section 1983 allows injured persons to vindicate wrongs created by the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see also Graham v. Connor*, 490 U.S. 386, 393-94 (explaining that Section

1983 is "a method for vindicating federal rights elsewhere conferred" (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n.3 (1979))).  To state a claim under Section 1983, a plaintiff must allege: (1) "the violation of a right secured by the Constitution and laws of the United States," and (2) that the violation "was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  The parties concede that all Defendants were acting under the color of state law.

The Defendants claim that qualified immunity bars the constitutional claims against them.  (Doc. 81 at 4-6.)  Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks omitted).  Once a defendant claims the protection of qualified immunity, the plaintiff has "a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right," and "(2) that the right was clearly established at the time of the defendant's unlawful conduct."  *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013).

Plaintiff makes three constitutional claims, alleging that the officers used excessive force, that the supervisors failed to properly train or supervise the officers, and that Los Alamos County had a policy and custom ratifying unconstitutional conduct.

### 1. *Excessive Force Claim*

Plaintiff alleges that Defendants Herrera, Romero, and Baker—all officers in the Los Alamos Police Department or in the Los Alamos County jail—violated his and his brother's Fourth and Eighth Amendment rights.  (Doc. 40 at 6.)  The factual allegations in the Complaint challenge the Defendant Officers' use of excessive force.  (Doc. 40 at 4-6.)  The Court "must

7

first place the objectionable events in this case somewhere along the custodial continuum running through initial arrest or seizure, post-arrest but pre-charge or pre-hearing custody, pretrial detention, and post-conviction incarceration; and then determine what constitutional protection controls at which particular juncture." *Austin v. Hamilton*, 945 F.2d 1155, 1158 (10th Cir. 1991), *rev'd on other grounds*, *Johnson v. Jones*, 515 U.S. 304 (1995) (citing *Graham*, 490 U.S. at 393-94).   When a pretrial detainee challenges mistreatment by police or jailers, the claim must be judged under either the Fourth Amendment "objective reasonableness" standard or the Fourteenth Amendment substantive due process standard.  *See Estate of Booker v. Gomez*, 745 F.3d 405, 419 (10th Cir. 2014) (explaining how a plaintiff's status in the criminal justice system affects the standard governing excessive force claims).

The Court will consider the claims under the Fourteenth Amendment.  According to the FAC, the Naranjos were "awaiting trial."  (FAC at 3.)  The Court interprets this to mean that the brothers had been arraigned and their cases set for trial.   Post-arraignment allegations are controlled by the Fourteenth Amendment.  *See Estate of Booker*, 745 F.3d at 419.   Courts analyzing excessive force claims under the Fourteenth Amendment examine three factors: "(1) the relationship between the amount of force used and the need presented; (2) the extent of the injury inflicted; and (3) the motives of the state actor."  *Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003); *Estate of Booker*, 745 F.3d at 424 (quoting same).  At the motion to dismiss stage, the plaintiff's pleading must have enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. 662, 678 (2009); *Gee*, 627 F.3d at 1184.

### a. Relationship between the amount of force and need presented

The Complaint alleges that the altercation began when Defendant Herrera and Plaintiff exchanged verbal abuses. (FAC at 4.) After Plaintiff disobeyed the commands to sit down, the officers used physical force to subdue him. (FAC at 4.) Similarly, when Nicholas Naranjo physically intervened, Defendants Herrera, Romero, and Baker used physical force against him as well. (FAC at 4.)

The factual situation created a need for some force. The Naranjos do not deny their role in the escalation of the incident, nor do they contest the lawfulness of their convictions for assault and battery on a peace officer. Given those facts, the officers were justified in applying force. However, the officers may have applied too much force given the circumstances.

At the time of the incident, the Naranjos were shackled and manacled with belly chains. (FAC at 3.) These ligatures significantly limit arm and leg movements. Further, Plaintiff alleges that the chokehold used on him amounted to "strangulation." (FAC at 4.) While chokeholds may be a common practice, extended chokeholds can amount to disproportionate force. *See Estate of Booker*, 745 F.3d at 425 (explaining that a carotid restraint applied for 1.5 minutes longer than police training recommends could amount to disproportionate force). Moreover, Defendant Herrera allegedly grabbed and twisted Nicholas Naranjo's genitalia. (FAC at 4.) Such an action crosses the line from proportional force into unjustified infliction of pain.

### b. Extent of injury

The Complaint alleges that both Naranjos suffered bodily injury to their necks, backs, wrists, arms, and legs. (FAC at 5.) Both brothers needed medical treatment for their injuries. (FAC at 5.) The Naranjos also claim to have suffered emotional distress. (FAC at 5.)

### c.   Motives of the state actors

The subjective intent standard for an excessive force due process violation is generally defined as force "inspired by malice or by excessive zeal that shocks the conscience." *Cortez v. McCauley*, 478 F.3d 1108, 1129 n.24 (10th Cir. 2007).   The Tenth Circuit recognizes that a showing of excessive force can amount to an allegation of excessive zeal. *See Estate of Booker*, 745 F.3d at 426.

In addition to the physical force described above, Plaintiff alleges that Defendant Herrera verbally abused them and threatened to ensure that Fidel Naranjo "would never get out of jail." (FAC at 4.)   The Plaintiff alleged enough facts to claim that the Defendant acted with excessive zeal.

Plaintiff's factual allegations sufficiently state a claim that the officers engaged in excessive force in violation of the Fourteenth Amendment.   Moreover, there is "a clearly established legal norm precluding the use of violent physical force against a criminal suspect or detainee who already has been subdued and does not present a danger to himself or others." *Estate of Booker*, 745 F.3d at 428 (quotation marks omitted).   Plaintiff's allegation that he was "strangled" and that Nicholas Naranjo's genitals were twisted states a claim that the physical force went beyond the amount necessary to subdue.   Thus, Plaintiff met his burden to overcome the claim of qualified immunity and survive a motion to dismiss.

The Complaint is not clear about who committed which acts.   However, the Complaint does state that all three officers—Defendants Herrera, Romero, and Baker— were present during the incident.   (FAC at 4.)   The presence of an officer can create an affirmative duty to intervene. *See Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996) ("[A] law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be

liable under § 1983.").  An officer, not himself guilty of using excessive force, may still violate a detainee's "clearly established rights by not taking steps to prevent other deputies' excessive force." *Estate of Booker*, 745 F.3d at 422; *see also Mascorro v. Billings*, 656 F.3d 1198, 1204 n.5 (10th Cir. 2011) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.").

In sum, Plaintiff's Complaint states a claim for excessive force against Defendants Herrera, Romero, and Baker in their individual capacities.

### 2.  Failure to Train or Supervise

Plaintiff claims that the Los Alamos Detention Supervisor and Los Alamos Police Chief (collectively, "Defendant Supervisors") failed to train or supervise the officers and thus caused their civil rights deprivation.  (FAC at 6.)  He also claims that Defendant Supervisors ratified and approved the officers' unlawful conduct.  (FAC at 6.)

To establish supervisory liability under Section 1983, a plaintiff must demonstrate an "affirmative link" between the supervisor and the violation, requiring: "(1) personal involvement; (2) causation, and (3) state of mind."  *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (citing *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010)).  A "supervisor's mere knowledge of his subordinate's conduct" is not enough. *See Iqbal*, 556 U.S. at 677.  For supervisory liability claims to survive a motion to dismiss, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Id.* at 676; *see also Schneider*, 717 F.3d at 768 (quoting same).

Plaintiff makes no factual allegations to support the supervisory liability claims other than conclusory allegations. No facts support the allegation that the Defendant Supervisors were personally involved, caused the deprivation of Plaintiff's constitutional rights, or had a state of mind to harm the Plaintiff. Without facts, Plaintiff cannot demonstrate the "affirmative link" between the Defendant Supervisors and the violation. The Section 1983 claims against the Defendant Supervisors are dismissed.

### 3. County Liability Theories

Plaintiff alleges that his unlawful treatment "was the result of official policy and custom of the County of Los Alamos." (FAC at 6.) Additionally, Plaintiff named all Defendants in their official capacity. (FAC.) Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (quotation marks omitted). "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's 'policy or custom' must have played a part in the violation of federal law." *Id.*; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 ("[W]hen execution of a government's policy or custom . . . whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury [then] the government as an entity is responsible under § 1983.").

A custom or practice must be "so permanent and well settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)); *see also Bryson v. City of Oklahoma City*, 627 F.3d 784, 791 (10th Cir. 2010). Additionally, the plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). "To establish the causation element, the challenged policy or practice must be 'closely related to the violation of the plaintiff's federally

12

protected right.'" *Cacioppo v. Vail*, 528 F. App'x 929, 932 (10th Cir. 2013), *cert. denied*, 134 S.
Ct. 1292 (2014).  The Supreme Court cautions that "[w]here a court fails to adhere to rigorous
requirements of culpability and causation, municipal liability collapses into *respondeat superior*
liability." *Brown*, 520 U.S. at 415.

In support of the custom or practice claim, Plaintiff alleges two facts: (1) "many similar
complaints and claims against the County which have been reported without result," and (2) the
County Detention Center now shows the video of the incident to all detainees "as a warning of
what will be done to them if they do not comply with all orders given by jailers."  (FAC at 6-7.)
Plaintiff's threadbare assertion about prior complaints does not adequately identify a permanent
custom that is closely related to Plaintiff's particular situation. *See City of Canton v. Harris*, 489
U.S. 378, 396 (1989) ("Where a § 1983 plaintiff can establish that the facts available to city
policymakers put them on actual or constructive notice that the particular omission is
substantially certain to result in the violation of the constitutional rights of their citizens, the
dictates of *Monell* are satisfied.").  The allegation, while possible, does not meet the plausible
threshold.

Plaintiff's allegation about the video deserves a closer look.  The Court is troubled by the
allegation that the County proudly shows the video to frighten detainees into obedience.  The
Plaintiff cannot establish a causal link between the video and his alleged deprivation of rights—
the alleged incident necessarily happened before the deprivation.  Yet, while Plaintiff cannot
state a custom or practice claim, Plaintiff may bring his ratification claim.  To hold a
municipality liable for ratification, the plaintiff must show that "a final decisionmaker ratifie[d]
an employee's specific unconstitutional actions, as well as the basis for these actions." *Bryson v.
City of Oklahoma City*, 627 F.3d 784, 790 (10th Cir. 2010).  The Plaintiff may have a viable

claim if (1) the video showcases the unconstitutional acts the Plaintiff alleges; (2) final decisionmakers in the County know about the video; and (3) final decisionmakers permit the video to be shown as a "warning" to detainees.  For that reason, the Court denies the motion to dismiss the claim.

Finally, Plaintiff alleges a deficient training program, but only offers conclusory allegations which must be disregarded after *Iqbal*.  *See Iqbal*, 556 U.S. at 678.  In sum, Plaintiff's Section 1983 claims alleging unconstitutional customs, practices, and trainings are dismissed.  The Plaintiff may move forward with the claim that the County's airing of the video amounts to a ratification of unconstitutional conduct.

**B.  State Law Tort Claims**

Plaintiff makes state law claims for assault, battery, personal injury, and wrongful death. Plaintiff alleges that state actors committed intentional torts, which are exceptions granted under New Mexico's Tort Claims Act ("NMTCA").  *See* N.M. Stat. Ann. § 41-4-17(A).

*1.  Assault and Battery*

 Plaintiff claims that Defendant Officers are liable for assault and battery under New Mexico tort law.  (FAC at 3-5.)   Defendants claim that the Naranjos' criminal conviction for assault and battery of a peace officer bars this claim.  (Doc. 81 at 7-8.)  At this stage, the Court disagrees.

Under New Mexico law, an assault is an "act, threat or menacing conduct which causes another person to reasonably believe that he is in danger of receiving an immediate battery." N.M. Stat. Ann. § 30–3–1(B).  Battery is an "act[] intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a

contact" when "an offensive contact with the person of the other directly or indirectly results." *State v. Ortega*, 827 P.2d 152, 155 (N.M. 1992) (citing Restatement (Second) Torts § 18).

Plaintiff alleges that the officers used harmful and offensive force, in the form of strangulation and groping. According to black letter law, the allegations state a claim for assault and battery. Defendants repeatedly point out that Naranjos were found guilty of assault and battery on the officers. (FAC at 7-8.) However, the criminal conviction does not necessarily bar this civil action.

Defendants are free to assert self-defense in response to the tort allegation. The New Mexico Supreme Court explained, "to justify [a]. . . battery committed by one person on another on the ground of self-defense, the person assaulted must have done some overt act or made a hostile demonstration of a character to give the assailant reasonable ground to suppose himself in imminent danger." *Faubion v. Tucker*, 270 P.2d 713, 715 (N.M. 1954); *Murphy v. Bitsoih*, 320 F. Supp. 2d 1174, 1203 (D.N.M. 2004) (quoting same). Given that Naranjos admit they participated in and escalated the violence, a claim of self-defense may be well-received. However, as the New Mexico Supreme Court clarifies, a claim of self-defense does not give a victim unlimited privileges. "[O]nly such force may be used as a reasonably prudent [person] under the circumstances would believe necessary to repel the assault." *Faubion*, 270 P.2d at 715; *see also Downs v. Garay*, 742 P.2d 533, 536 (N.M. Ct. App. 1987) ("[T]he privilege of . . . self-defense [ ] is limited to the use of reasonable force.").

Plaintiff's entire claim is centered on the idea that while some force was justified, the officers used excessive force against them. Notwithstanding the Naranjos' criminal conviction for assault and battery, the officers may have responded with unnecessary force. The standard at motion to dismiss is plausibility, not probability. *Iqbal*, 556 U.S. at 678 ("The plausibility

standard is not akin to a 'probability requirement' . . . ."). The Complaint states a plausible state law tort claim.

Plaintiff additionally claims that Los Alamos County is liable by virtue of *respondeat superior*. (FAC at 5.) The doctrine of respondeat superior applies to NMTCA claims. *Silva v. State*, 745 P.2d 380, 384-85 (N.M. 1987). Under the doctrine of respondeat superior, direct supervision is not a requirement so a plaintiff may hold a political entity liable "if it had the right to control the employee's actions." *Lopez v. Las Cruces Police Dep't*, 137 P.3d 670, 677 (N.M. Ct. App. 2006).

To hold a county liable under respondeat superior, the plaintiff must allege (1) that the county had "direct supervisory control over the negligent employee responsible for the harm," and (2) that the county had some responsibility for the alleged harm—in other words, that the county's role in the incident was not "too remote." *Weinstein v. City of Santa Fe*, 916 P.2d 1313, 1318-19 (N.M. Ct. App. 1996). Plaintiff merely stated a conclusory allegation that the County was liable with any supporting facts. The sentence does not meet the standard for stating a plausible claim of respondeat superior. The allegation against the County must be dismissed.

### 2. *Personal Injury and Wrongful Death*

Finally, Plaintiff alleges that Defendants are liable for the wrongful death of Nicholas Naranjo. The New Mexico Wrongful Death Act is a survival statute that provides relief for decedents whose death was caused "by the wrongful act, neglect or default of another . . . ." N.M. Stat. Ann. § 41-2-1.

A year after the alleged incident, Nicholas Naranjo was ordered to return to jail after failing to pay his court costs and fees. (FAC at 7.) Shortly before he had to return, he committed suicide. (FAC at 7.) Plaintiff's theory is that Nicholas Naranjo was traumatized by Defendants' assault and was driven to commit suicide. (FAC at 7.)

16

Wrongful death liability for deaths occurring by suicide is controversial.  Traditionally, "recovery for such a death in a wrongful death action usually has been denied on the ground that the suicide is a new and independent agency that severs the causal connection between the defendant's wrongful act and the decedent's death, so as to preclude any recovery in the action." 12 Am. Jur. Trials 317 (1966).  New Mexico courts regularly consider suicide an independent intervening cause.  *See e.g.*, *City of Belen v. Harrell*, 603 P.2d 711 (N.M. 1979) (remanding with instructions to consider suicide an independent intervening cause or contributory negligence); *Zia Trust, Inc. v. Aragon*, 258 P.3d 1146, 1153 (N.M. Ct. App. 2011) (affirming a jury instruction that suicide is an independent intervening cause).

No New Mexico case law is directly on point.  In *Silva*, the Supreme Court upheld a negligence claim against the Corrections Department for an inmate who officials knew posed a high risk of suicide.  *See* 745 P.2d at 381, 385; *see also City of Belen*, 603 P.2d at 714 (permitting mother of a detainee who committed suicide while in custody to bring a suit, but ordering a new trial so the jury could consider suicide an independent intervening cause).  No case upheld an action against government officials for a former detainee's suicide when outside of custody.

Courts are more willing to impose wrongful death liability when the tortfeasor's intentional actions were a substantial factor in the suicide.  *See* Restatement (Second) of Torts § 435A (1965) (collecting cases).  In particular, when a decedent acts under an irresistible impulse because the tortfeasor's conduct "depriv[ed] another of his capacity to reason," courts have imposed liability for deaths by suicide.  *See* Restatement (First) of Torts § 280 (1934); *see also* Restatement (Third) of Torts: Phys. & Emot. Harm § 33 cmt. e (2010) ("[T]he scope of liability for intentional and reckless tortfeasors for unintended harms is broader . . . .").

When considering an intentional tortfeasor's scope of liability, courts should consider the tortfeasor's "moral culpability."  Restatement (Third) of Torts: Phys. & Emot. Harm § 33 cmt. e (2010).  The relevant factors include "whether the tortfeasor acted with the purpose to cause harm or only with the knowledge that the harm was substantially certain to occur; the maliciousness of the tortfeasor's intent; and the seriousness of the harm intended."  *Id.*  The Restatement cautions that liability should be limited when the nature of a tortfeasor's "intentional tort is not highly culpable, as when an actor commits a battery, subjectively, but unreasonably, believing it to be justified by self-defense."  *Id.*

At the motion to dismiss phase, the Court will not delve into the relevant factors. However, to state a claim, the tortious conduct must be both a factual and proximate cause of the harm.  *Id.*  Although not insensitive to the detrimental effects and influences of trauma, the Court is not willing to hold an officer of New Mexico liable for such a claim.  Suicide is a complex phenomenon.  The Complaint's version of the facts does not suggest the officers were "highly culpable."  Moreover, Nicholas Naranjo's death occurred one year after the alleged battery.  The gap in time attenuates the causal chain, if any such chain exists.  Because the Complaint did not factually demonstrate that Defendants' conduct proximately caused Nicholas Naranjo's death, the wrongful death claim must be dismissed.

IV.    CONCLUSION

Plaintiff's Complaint effectively states a claim for excessive force in violation of the Fourteenth Amendment against Defendant Officers Herrera, Romero, and Baker in their individual capacities.  Similarly, Plaintiff's  claim of assault and battery against the officers is sufficient to survive a motion to dismiss.  Finally, the Plaintiff stated a claim that municipal decisionmakers ratified unconstitutional conduct by airing the video of the altercation.

In contrast, the Complaint failed to allege facts to support constitutional claims concerning a failure to train or supervise and unlawful customs or practices.  The Complaint also did not allege plausible proximate cause giving rise to liability for the wrongful death claim.

**THEREFORE**,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 81) is **GRANTED** in part and **DENIED** in part:

(1) The Motion is **DENIED** with respect to Count I against Defendants Herrera, Romero, and Baker in their personal capacities; and

(2) The Motion is **DENIED** with respect to Count II against all Defendants; and

(3) The Motion is **GRANTED** with respect to Count III.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**